**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

ETHAN O'DELL MOODY                                                              PLAINTIFF

v.                                          No. 4:12CV00312 JLH

ARKANSAS STATE HIGHWAY &
TRANSPORTATION DEPARTMENT;
FRANK VOZEL, Deputy Director and Chief Engineer,
in his official and individual capacities; and
DAN FLOWERS, Director of the Highway &
Transportation Department, in his
official and individual capacities                                              DEFENDANTS

## OPINION AND ORDER

Ethan O'Dell Moody brings this action against his former employer, the Arkansas State

Highway and Transportation Department, and two of its directors, Frank Vozel and Dan Flowers,

in their official and individual capacities.  Pursuant to Title VII and 42 U.S.C. § 1983, Moody alleges

claims of sex and race discrimination, retaliation, equal protection and due process violations, and

civil conspiracy.  All of these claims stem from Moody's discharge.  The defendants have now moved

to dismiss most of the claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Moody

has responded and has requested the Court to convert the proceedings into a summary judgment

analysis.  For the following reasons, the defendants' motions to dismiss are granted.

## I.

The pleading standards, and the correlative standards for ruling on a motion to dismiss under

Rule 12(b)(6), are well known.  A complaint must contain "a short and plain statement of the claim

showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While Rule 8(a)(2) does not

require a complaint to contain detailed factual allegations, it does require a plaintiff to state the

grounds of his entitlement to relief, which requires more than labels and conclusions.  *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007).  In ruling on

a motion to dismiss, the Court must accept as true all factual allegations in the complaint and review

the complaint to determine whether its allegations show that the pleader is entitled to relief.  *Schaaf*

*v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008).  All reasonable inferences from the

complaint must be drawn in favor of the nonmoving party.  *Crumpley-Patterson v. Trinity Lutheran*

*Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004).  The Court need not, however, accept as true legal

conclusions, even those stated as though they are factual allegations.  *Ashcroft v. Iqbal*, 556 U.S.

662, 678, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009).

## II.

The following facts are taken from the complaint.  For more than 26 years, Moody was

employed by AHTD, which is an agency of the State of Arkansas.  During that time, Moody received

annual and merit raises, and he never received an oral warning, written reprimand, demotion, or time

off without pay.  In July 2008, Moody was promoted to crew leader.  At some point prior to April

2010, Moody applied for a supervisor's position in Jackson County, Arkansas.

In 2008 or 2009, Moody reported to his superior that he had observed a female AHTD

employee, Wanda Aldrich, holding a knife to the neck of a black employee, Ernest Russell.  Both

Aldrich and Russell denied that the incident occurred, although Aldrich told Moody on October 26,

2010, that "[s]omeone is going to pay for telling on me for pulling a knife on Ernest's throat."  On

July 14, 2010, Moody reported that AHTD employees Belinda Rogers—Aldrich's cousin—and

Rebecca Bohannon were swimming while they were on the clock.  On August 9, 2010, Moody

encountered Bohannon while she was wearing cut-offs and washing herself off with a herbicide hose;

he told her to put her work clothes back on or sign out.  More recently, Moody enforced AHTD's

2

no cell phone policy.

Between April 2010 and October 2010, five false allegations of sexual harassment were made against Moody.  In one instance, Rogers falsely accused Moody of "putting a stop and slow sign between her legs."  In addition, Bohannon falsely accused Moody of patting her on her backside, stating to her that "her milk would sour in those things," and pulling on her jeans pocket.  These allegations were all made because Aldrich, Rogers, and Bohannon wanted to get Moody fired instead of him being promoted to the supervisor position for which he had applied.  Moody was discharged on November 1, 2010, and was notified of this termination on November 10.

On May 24, 2011, Moody filed a charge of discrimination with the Equal Employment Opportunity Commission against AHTD alleging race and sex discrimination and retaliation under Title VII, section 1983, and the Arkansas Civil Rights Act.  In the charge, Moody recounted the above facts concerning Aldrich, Rogers, and Bohannon; he did not, however, mention Vozel or Flowers.[1]  On February 29, 2012, the EEOC notified Moody that it declined to pursue the action. On May 25, 2012, Moody filed his complaint in this Court against Vozel, Flowers, and AHTD.  In it, in addition to the aforementioned facts, Moody alleges that the discharge was the culmination of a  conspiracy involving the false sexual allegations and that it was "in retaliation for his testimony in a racial incident, for enforcing the rule about no cell phones, and [for] reprimands he gave for workplace violations."  Moody also alleges that the discharge occurred "prior to any good faith investigation" and that there was a "sham investigation with a foregone conclusion."

---

[1] At the time of Moody's discharge, Vozel was AHTD's deputy director and chief engineer, and Flowers was the AHTD director.  Flowers has since retired.

## III.  TITLE VII CLAIMS

Under Title VII, Moody brings claims of sex discrimination, race discrimination, and retaliation against all the defendants.  The defendants have moved to dismiss all of these claims, except the claims against AHTD for race and sex discrimination, pursuant to Rule 12(b)(6).  The Court will address these arguments in turn.

### A.    INDIVIDUAL-CAPACITY CLAIMS

Vozel and Flowers move to dismiss the Title VII claims against them in their individual capacities.  In response, Moody admits that Vozel and Flowers cannot be held personally liable under Title VII.  Therefore, all Title VII claims against Vozel and Flowers in their individual capacities will be dismissed with prejudice.  *See Clegg v. Ark. Dep't of Corrs.*, 496 F.3d 922, 931 (8th Cir. 2007); *Schoffstall v. Henderson*, 223 F.3d 818, 821 n.2 (8th Cir. 2000).

### B.    EEOC CHARGE

Vozel and Flowers move to dismiss the official capacity Title VII claims against them because they were not named in the original charge of discrimination submitted by Moody to the EEOC.  *See* Document #36-4, at 2.  It is generally true that a plaintiff must file a charge against a particular party with the EEOC before a lawsuit against that party is allowed under Title VII.  *See Lewis v. Asplundh Tree Expert Co.*, 402 F. App'x 454, 456 (11th Cir. 2010) (citing *Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1358 (11th Cir. 1994).  This general rule does not apply, however, if the party named before the EEOC and the party sued later are completely identical, *see Duffy v. Se. Pa. Transp. Co.*, No. CIV. A. 94-4260, 1995 WL 299032, at *2 (E.D. Pa. May 12, 1995) (citing *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 461 (4th Cir. 1988)), or if there is a sufficient identity of interest between them to provide notice of the charges to the latter party.

*See Winbush v. State of Iowa, by Glenwood State Hosp.*, 66 F.3d 1471, 1478 n.9 (8th Cir. 1995) (citing *Greenwood v. Ross*, 778 F.2d 448, 451 (8th Cir. 1985)).

In asserting official-capacity claims against Vozel and Flowers, Moody is essentially asserting claims against AHTD itself. *See Zajrael v. Harmon*, 677 F.3d 353, 355 (8th Cir. 2012) ("A suit against state employees in their official capacities is the functional equivalent of a suit against the State."). Thus, there is a complete identity of interest between AHTD and Vozel and Flowers in their official capacities, and it is irrelevant whether the latter were specifically named in the EEOC charge. *See Duffy*, 1995 WL 299032, at *2 (citing *Alvarado*, 848 F.2d at 461). For the same reason, however, the official capacity claims against Vozel and Flowers are redundant of the claim against AHTD and therefore should be dismissed without prejudice. *See Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010).

C.    **PUNITIVE DAMAGES**

AHTD moves to dismiss any claim against it for punitive damages under Title VII because Title VII does not allow for punitive damages against a state agency. Moody does not directly dispute this argument. Moody's claims for punitive damages under Title VII will therefore be dismissed with prejudice.[2] *See* 42 U.S.C. § 1981a(b)(1) ("A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) . . . ."); *Robinson v. Runyon*, 149 F.3d 507, 517 (6th Cir. 1998) ("It is therefore clear that the Postal Service is a government agency for purposes of Title VII and accordingly we

---

[2] In response, Moody asserts that punitive damages are allowed under the Arkansas Civil Rights Act (ACRA), which should be read in conjunction with Moody's other claims. *See* Document #16, at 8. Moody did not, however, bring any claims under ACRA or even mention it in his complaint, even though he mentioned it in his EEOC charge.

follow the Seventh Circuit in finding that as such the Postal Service is exempt from punitive damages.").

D.   RETALIATION

In 2002, the Supreme Court held that, in the employment discrimination context, a plaintiff's complaint does not necessarily need to "contain specific facts establishing a prima facie case of discrimination under the framework set forth by this Court in *McDonnell Douglas Corp. v Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, 122 S. Ct. 992, 995, 152 L. Ed. 2d 1 (2002). Rather, the complaint "must contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (citing Fed. R. Civ. P. 8(a)(2)). The Supreme Court so held in large part because the notion of a "prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." *Id.* at 510, 122 S. Ct. at 997. Some of the circuits have held that *Swierkiewicz* is still good law. *See, e.g.*, *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012) ("The Supreme Court's subsequent decisions in *Twombly* and *Iqbal* did not alter its holding in *Swierkiewicz*."); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404-05 (7th Cir. 2010).[3] Even so, the *McDonnell Douglas* framework may still assist the Court in determining whether a complaint contains, in light of *Twombly* and *Iqbal*, a basic statement of the claim showing that the plaintiff deserves relief. *See* Fed. R Civ. P. 8(a)(2); *Khalik*

---

[3] Whether *Twombly* and *Iqbal* overturned or significantly altered *Swierkiewicz* appears to be a somewhat open question in the Eighth Circuit and at least two other circuits. *See Hedges v. Town of Madison*, 456 F. App'x 22, 23 (2d Cir. 2012) ("We need not resolve these conflicts here, however, for Hedges's claims fail any conceivable standard of pleading."); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 319 n.17 (3d Cir. 2010) ("Although *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009), stated that *Twombly* and *Iqbal* had 'repudiated' the Supreme Court's earlier decision in *Swierkiewicz* . . . we are not so sure. . . . In any event, *Fowler*'s reference to *Swierkiewicz* appears to be dicta, as *Fowler* found the complaint before it to be adequate.").

*v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) ("While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim. . . . Thus, we start by discussing the elements a plaintiff must prove to establish a claim for discrimination and retaliation under Title VII . . . ."). This approach is especially appropriate here, where both parties have briefed the Court within the *McDonnell Douglas* framework, seemingly assuming it would control the outcome. *See* Document #41, at 5 (Defendants: "[Moody's] claims under Title VII . . . must be analyzed under the three-stage burden-shifting test as set forth in *McDonnell Douglas*."); Document #17, at 10 (Plaintiff: "[Moody] suffered a material adverse employment action, discharge, and there is a causal connection between the protected activity and the adverse action.").

Under *McDonnell Douglas*, a prima facie retaliation case contains three elements. *Gibson v. American Greetings Corp.*, 670 F.3d 844, 856 (8th Cir. 2012). At the summary judgment stage, a plaintiff must provide evidence that "he engaged in protected activity; he suffered a materially adverse action that would deter a reasonable employee from making a charge of employment discrimination; and there is a causal connection between the protected activity and the adverse action." *Id.* (citation omitted).

The defendants primarily argue that Moody has failed to allege sufficiently that he engaged in protected activity. To engage in protected activity, an employee must either oppose an "unlawful employment practice" as defined by Title VII or oppose what the employee objectively, reasonably, and in good faith believes to be an unlawful employment practice, even if this belief is incorrect. *See Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1020 (8th Cir. 2011); *Bonn v. City of Omaha*, 623 F.3d 587, 591 (8th Cir. 2010); *Evans v. Kan. City, Mo. Sch. Dist.*, 65 F.3d 98, 100 (8th Cir. 1995). As defined

7

by Title VII, an "'unlawful employment practice' is discrimination on account of 'race, color, religion, sex, or national origin.'" *Smith v. Int'l Paper Co.*, 523 F.3d 845, 849 (8th Cir. 2008) (quoting 42 U.S.C. § 2000e-2(a)).

Here, Moody contends that he engaged in protected activity by reporting to his superiors that a female AHTD employee held a knife to a male employee's neck. Moody's factual allegations on this point are as follows:

> 20.    Three to four years ago, Plaintiff reported observing a female employee, Wanda Aldrich, holding a knife to Ernest Russell's neck; Ernest Russell ("Russell"), another AHTD employee is black; both Aldrich and Russell denied the incident.

> 21.    On October 26, 2010, Wanda Aldrich stated to Plaintiff, "Someone is going to pay for telling on me for pulling a knife on Ernest's throat."

Document #1, at 3. Reporting an incident of racial or sexual harassment is protected activity under Title VII. *See Green v. Franklin Nat'l Bank of Minn.*, 459 F.3d 903, 914 (8th Cir. 2006). Moody's allegations are so sparse, however, that it cannot be determined whether the incident that he reported was an instance of racial or sexual harassment. He does not allege Aldrich's race; and, although he alleges that she is a female, he alleges nothing to show that the incident involved harassment based on Russell's status as a male. Nor does he allege facts to show that he reasonably believed that the incident was racial or sexual harassment.

Furthermore, Moody has failed to allege any facts that would plausibly indicate that Vozel and Flowers terminated him for making the report. Moody's allegation that he was discharged "in retaliation for his testimony in a racial incident" is conclusory and thus need not be accepted as true. *See* Document #1, at 5; *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949-50. Aside from this conclusory statement, the factual allegations in the complaint simply do not support Moody's claim that Vozel and Flowers terminated his employment in retaliation for reporting this fracas. Rather, they support

8

the conclusion that Aldrich, Rogers, and Bohannon conspired to make false accusations of sexual harassment against Moody in order to induce his discharge, and that Vozel, Flowers, and others discharged him on the basis of these allegations.  *See, e.g.,* Document #1, at 5 ("Rogers and Bohannon's slanderous and libelous allegations of sexual misconduct described herein constitutes a conspiracy with Aldrich which culminated with the removal of Plaintiff from his employment with Defendant AHTD.").[4]  If, as the complaint seems to allege, Vozel and Flowers honestly believed the charges made against Moody by his co-workers, Moody's claim of retaliation fails, even if the charges were false.[5]

In *McCullough v. University of Arkansas for Medical Sciences*, 559 F.3d 855 (8th Cir. 2009), the Eighth Circuit affirmed summary judgment on facts similar to those alleged here.  The plaintiff there was a male employee who had been discharged after female employees accused him of sexual harassment.  The plaintiff denied the allegations and contended they were pretexts for sex discrimination.  The Eighth Circuit explained:

> The critical inquiry in discrimination cases like this one is not whether the employee actually engaged in the conduct for which he was terminated, but whether the employer in good faith believed that the employee was guilty of the conduct justifying

---

[4] Moody does not exactly back away from this conclusion in his briefs.  *See, e.g.*, Document #17, at 7 ("Frank Vozel and Dan Flowers are co-conspirators by implication of their position and acts of discharging Plaintiff *on the word of Aldrich, Rogers, and Bohannon*." (emphasis added)); *id.* at 9 ("Vozel and Flowers relied on statements from employees with a short questionable history with the AHTD.").

[5] In paragraph 46 of his complaint, describing the basis for his due process claim, Moody alleges, "[t]his occurred in several particulars but is not limited thereto, viz, a sham investigation with a foregone conclusion, discharge, pretextually, based on the conspiratorial accusations of Defendants Aldrich, Rogers and Bohannon."  Document #1, at 6-7.  Aldrich, Rogers, and Bohannon are not defendants.  Assuming that Moody intends to allege that the claims of sexual harassment were merely pretextual in Vozel's and Flowers' minds, the allegation is purely conclusory.  He has alleged no facts to make such an allegation plausible.

discharge. A plaintiff seeking to survive an employer's motion for summary judgment must therefore show a genuine issue for trial about whether the employer acted based on an intent to discriminate rather than on a good-faith belief that the employee committed misconduct justifying termination.

*Id*. at 861-62 (citations omitted). In *McCullough*, the court held that the plaintiff had not presented sufficient evidence to create an issue for trial on the question of whether the persons who made the decision to discharge him genuinely believed that he had engaged in the conduct of which he had been accused. *Id*. at 862; *see also Walker v. Ark. Dept. of Community Correction*, 436 F. App'x 729 (8th Cir. 2011) ("Proffered legitimate, non-discriminatory reason for termination need not be correct if employer honestly believed asserted grounds at time of termination." (citing *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006)). Here, Moody alleges no facts that, if proven, would tend to show that the decisionmakers acted on an intent to discriminate against him rather than on a good-faith belief that he committed the misconduct of which he was accused.[6]

There is yet another reason that Moody's complaint fails to allege facts that, if true, would plausibly suggest that he was terminated for reporting the knife incident. Moody alleges that he reported the knife incident "[t]hree to four years ago," which would place it at some point in 2008 or 2009. Document #1, at 3; *see also id*. at 1 (complaint filed on May 25, 2012).[7] Moody was not terminated until early in November of 2010, one or two years after the incident, *id*. at 4, which is far beyond what the Eighth Circuit has said would satisfy a finding of a prima facie causal connection

_____

[6] Moody alleges that the conduct of the female employees who made the false accusations is imputed to AHTD, but, as *McCullough* shows, the case law is clear that the relevant inquiry relates to the intent of the decisionmakers, not the co-workers who made allegations of misconduct against the plaintiff.

[7] He made the same statement in his EEOC charge, which was filed on May 23, 2011. Three or four years prior to the date of his EEOC charge would push the incident into 2007 or 2008.

based on timing alone.  *See Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 986 (8th Cir. 2011) ("The inference [of causal connection] vanishes altogether when the time gap between the protected activity and the adverse employment action is measured in months."); *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir. 2002) (noting that two months between a protected activity and adverse employment action could not justify a finding of causation).  Moody does assert in his briefs that there was a close temporal connection between Aldrich's remark that someone "is going to pay for telling on me" and the subsequent sexual misconduct allegations.  That assertion, however, would tend to show that Moody was terminated because of the reports of sexual misconduct, which occurred shortly before the termination, rather than because he reported the knife incident, which occurred more than a year earlier.  Accepting Moody's factual allegations and even this assertion from his brief as true, they do not plausibly suggest that he was discharged because of his report of the knife incident.

"Affirmative efforts to punish a complaining employee are at the heart of any retaliation claim."  *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 721 (2nd Cir. 2010).  While Moody is not required to plead facts that would definitively establish each element of a prima facie retaliation case under the *McDonnell Douglas* framework, he is required to allege facts sufficient to show the ground of his entitlement to relief, which in context means that he is required to allege facts that would render it plausible that he was discharged in retaliation for engaging in activity that is protected under Title VII.  He has failed to do so.  Therefore, his Title VII retaliation claims will be dismissed without prejudice.

## IV.  42 U.S.C. § 1983 CLAIMS

Pursuant to 42 U.S.C. § 1983, Moody brings due process, equal protection, and civil

conspiracy claims.  The defendants have moved to dismiss all of these claims.  The Court will address these arguments in turn.

## A.  STATE AGENCY

It is undisputed that all of Moody's section 1983 claims against AHTD must be dismissed because AHTD is a state agency, not a person, and only persons can be sued under section 1983.[8] *See West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55, 101 L. Ed. 2d 40 (1988) ("[U]nder § 1983, a plaintiff . . . must show that the alleged deprivation was committed by a person . . . ."). Similarly, Moody's section 1983 claims against Vozel and Flowers in their official capacities must be dismissed to the extent that they request anything other than injunctive relief.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 & n.10, 109 S. Ct. 2304, 2312 & n.10, 105 L. Ed. 2d 45 (1989) (state officials acting in their official capacities are not persons under section 1983 unless they are sued for injunctive relief).  These claims will be dismissed with prejudice.

## B.  QUALIFIED IMMUNITY

Vozel and Flowers argue that they are entitled to qualified immunity on the section 1983 claims brought against them in their individual capacities.  At the Rule 12(b)(6) stage, qualified immunity is determined from the face of the complaint.  *See Schatz Family ex rel. Schatz v. Gierer*, 346 F.3d 1157, 1159 (8th Cir. 2003) (citing *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996)). Thus, Vozel and Flowers are entitled to qualified immunity unless (1) the complaint alleges facts that, if true, would establish "a violation of a constitutional or statutory right, and (2) the right was clearly

---

[8] Thus, Moody's allegation that AHTD is responsible to him for the conduct of Aldrich, Rogers, and Bohannon fails even apart from the fact that liability under section 1983 cannot be based on the doctrine of respondeat superior.  *See Royster v. Nichols*, 698 F.3d 681, 692 (8th Cir. 2012) (respondeat superior is inapplicable to claims under section 1983).

established at the time of the violation, such that a reasonable officer would have known that his actions were unlawful." *Bernini v. City of St. Paul*, 665 F.3d 997, 1002 (8th Cir. 2012) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 815-16, 172 L. Ed. 2d 565 (2009)). Here, Moody alleges that his rights to due process and equal protection were violated. The initial question is whether the facts alleged in the complaint, if accepted as true, establish a violation of these rights.

The Equal Protection Clause is "implicated when the government makes class-based decisions in the employment context, treating distinct groups of individuals differently." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 605, 128 S. Ct. 2146, 2155, 170 L. Ed. 2d 975 (2008) (citations omitted). Moody makes no allegation that he was the victim of a class-based decision. Nor does he allege that he was treated differently from some similarly situated person of a different race, sex, or religion. He alleges nothing to indicate that he has a plausible equal protection claim. Flowers and Vozel are therefore entitled to qualified immunity on this claim. *See McDonald v. City of St. Paul*, 679 F.3d 698, 705-06 (8th Cir. 2012).

To prevail on a procedural due process claim, Moody must have had a protected property interest in his employment. *See Cleve. Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S. Ct. 1487, 1491, 84 L. Ed. 2d 494 (1985). The Court must look to state law to determine whether Moody had such an interest. *Eddings v. City of Hot Springs, Ark.*, 323 F.3d 596, 601 (8th Cir. 2003). In Arkansas, "when an employee's contract of employment is for an indefinite term, either party may terminate the relationship without cause or at will." *Tripcony v. Ark. Sch. for Deaf*, --- S.W.3d ----, 2012 Ark. 188, at *9 (2012) (citations omitted); *see also Ga.-Pac. Consumer Prods. LP v. Myers Supply, Inc.*, 621 F.3d 771, 779 (8th Cir. 2010) ("The agreement . . . was for an indefinite term and thus was an at-will contract." (citing *Griffin v. Erickson*, 277 Ark. 433, 642

13

S.W.2d 308, 310 (1982)).  If a person is employed at-will, he does not have a protected property interest in his employment.  *See Eddings*, 323 F.3d at 601.  It is only when the employment is for a definite period or where "an employee handbook contains an express provision against termination except for cause" that an employee will not be considered at-will and will be considered to have a protected property interest.  *Id.* (internal marks omitted).

Moody's complaint alleges no facts to show that he was not an at-will employee, and in his briefs, Moody essentially admits that he was an at-will employee.  *See* Document #24, at 6-8.  He contends, nonetheless, that under the Eighth Circuit's decision in *Turner v. Arkansas Insurance Department* an at-will employee can sue when it is clear that "a reasonable public official would have known that the conduct complained of was unlawful."  297 F.3d 751, 755 (8th Cir. 2002).  *Turner* is not on point, however, as the Eighth Circuit there was addressing a section 1981 claim, not a section 1983 claim, and it was addressing the second qualified immunity element, not the first.  *See id.* (affirming that "it was 'clearly established' on September 23, 1999, that 42 U.S.C. § 1981 conferred upon an at-will employee the right to be free from discharge based on racial discrimination or in retaliation for exercising his rights."); *see also Skinner v. Maritz, Inc.*, 253 F.3d 337 (8th Cir. 2001) (similar holding in regard to Missouri law).  Because Moody has not alleged facts that would establish that he had a protected property interest in his employment, he has failed to state a claim for violation of his rights to procedural due process.

To prevail on a substantive due process claim, Moody must show that a government official violated one or more of his fundamental constitutional rights, and that this was done in a manner that "was shocking to the 'contemporary conscience.'"  *White v. Smith*, 696 F.3d 740, 754 (8th Cir. 2012) (citation omitted).  Moody has not alleged facts sufficient to meet either of these hurdles.  As already

explained, Moody has not alleged facts that, if proven, would show that the defendants violated any of his constitutional rights.  And nothing in the complaint describes conduct by the defendants that was so egregious, outrageous, brutal, or inhumane as to shock the conscience and trigger substantive due process concerns.  *See id.* at 757-58.  Moody's substantive and procedural due process claims will be dismissed without prejudice.

For the above reasons, Vozel and Flowers, in their individual capacities, are entitled to qualified immunity on the section 1983 claims, so these claims will be dismissed without prejudice. This holding moots the issue of whether punitive damages are available under section 1983. Likewise, the conclusions reached above dispose of Moody's section 1983 claims against Flowers and Vozel in their official capacities for injunctive relief, so those claims also will be dismissed without prejudice.

## C.    CIVIL CONSPIRACY

As noted above, Moody alleges that five false accusations of sexual harassment were made against him between April of 2010 and October of 2010, in a conspiracy by certain female AHTD employees to have him fired.  Document #1, at 4-7.  In the absence of a constitutional violation, however, there can be no actionable civil conspiracy claim under section 1983.  *See Dossett v. First State Bank*, 399 F.3d 940, 950 (8th Cir. 2005); *Cook v. Tadros*, 312 F.3d 386, 388-89 (8th Cir. 2002) (collecting cases).  Here, the Court has already dismissed Moody's equal protection and due process claims, so Moody's civil conspiracy claims cannot survive.

Even if Moody had stated a claim for a constitutional violation, his conspiracy claims would still fail.  "A civil conspiracy is an agreement between two or more people to commit a wrong against another person."  *Doe v. Baxter Healthcare Corp.*, 380 F.3d 399, 410 (8th Cir. 2004).  To state a

conspiracy claim under section 1983, Moody would have to allege, among other things, the existence of a mutual understanding or a meeting of the minds involving the defendants. *See Dossett*, 399 F.3d at 951 ("Under § 1983, a plaintiff must establish . . . that the private actor willfully participated with state officials and reached a mutual understanding concerning the unlawful objective of a conspiracy."); *White v. Walsh*, 649 F.2d 560, 561-62 (8th Cir. 1981) (similar).

Moody's complaint never states that the AHTD personnel who made the decision to fire him were part of a mutual understanding or had a meeting of the minds with the employees who conspired to make false accusations in order to precipitate his discharge. Rather, as explained earlier, Moody alleges that Aldrich, Rogers, and Bohannon conspired to make false accusations against him, and that Vozel, Flowers, and others fired him based on these accusations. *See, e.g.,* Document #1, at 5 ("Rogers and Bohannon's slanderous and libelous allegations of sexual misconduct described herein constitutes a conspiracy with Aldrich which culminated with the removal of Plaintiff from his employment with Defendant AHTD."). Nowhere does Moody allege that Vozel and Flowers were members of the conspiracy; to the contrary, he seems to claim that they were duped by the conspiracy.[9] Moody has failed to state a conspiracy claim against Vozel and Flowers, so that claim will be dismissed without prejudice. *See Ladd v. St. Louis Bd. of Police Comm'rs*, No. 4:05-CV-916, 2006 WL 2862165, at *6 (E.D. Mo. Oct. 4, 2006) ("[U]nlike the very specific facts alleged in [*White*

---

[9] In one brief, Moody asserts that Vozel and Flowers were part of the conspiracy based on the assumption that Vozel and Flowers can be considered "co-conspirators by implication of their position and acts of discharging Plaintiff on the word of Aldrich, Rogers, and Bohannon." Document #17, at 7. In a section 1983 case, however, an official is only liable for his own misconduct and is not liable for the misconduct of his agents on a respondeat superior theory. *Whitson v. Stone Cnty. Jail*, 602 F.3d 920, 928 (8th Cir. 2010). Notably, in another brief, Moody indicates that Vozel and Flowers were *not* part of the conspiracy. *See, e.g.,* Document #24, at 4-5, 9 (naming only Aldrich, Rogers, and Bohannon, John Jones, Elvis Garrett, and Bruce Street as conspirators).

*v. Walsh*], the facts alleged here simply do not suggest a mutual understanding of the alleged conspiracy or a meeting of the minds. The conspiracy purportedly involves Pickering and the BPC, but the Amended Complaint is utterly devoid of any facts suggesting that Pickering and the BPC reached an agreement to 'cover up' the alleged deprivation of Ladd's constitutional rights.  In fact, the Amended Complaint makes little mention of the BPC at all . . . ."); *Rucker v. Gloe*, 432 F. App'x 631, 633 (7th Cir. 2011) (similar); *Stewart v. Victoria's Secret Stores, LLC*, 851 F. Supp. 2d 442, 445 (E.D.N.Y. 2012) (similar).

## VI.  SUMMARY JUDGMENT

In responding to the defendants' motion to dismiss, Moody has submitted materials that, if taken into account, would require the Court to convert the motion to a motion for summary judgment.  *See Brooks v. Midwest Heart Grp.*, 655 F.3d 796 (8th Cir. 2011).  No discovery has apparently been conducted, nor have any depositions been taken, so the Court will not convert the present motion to a motion for summary judgment.  *See Casazza v. Kiser*, 313 F.3d 414, 417 (8th Cir. 2002) ("Rule 12(b)(6) motions are not automatically converted into motions for summary judgment simply because one party submits additional matters in support of or [in] opposition to the motion.") (citation omitted).

## CONCLUSION

For the foregoing reasons, the defendants' motions to dismiss are GRANTED.  Document #5; Document #9.  Moody's partial motion for summary judgment is DENIED.  Document #35. The Court dismisses the following claims with prejudice:

  • all Title VII claims against Vozel and Flowers in their individual capacities;

  • all punitive damages claims under Title VII;

17

• all section 1983 claims against AHTD; and

• all section 1983 claims against Vozel and Flowers in their official capacities for anything other than injunctive relief.

The Court dismisses the following claims without prejudice:

• all Title VII claims against Vozel and Flowers in their official capacities;

• all Title VII retaliation claims;

• all section 1983 due process and equal protection claims against Vozel and Flowers, both in their individual and official capacities; and

• all section 1983 conspiracy claims against Vozel and Flowers.

The defendants have not moved to dismiss Moody's race and sex discrimination claims against AHTD under Title VII, so those claims survive.

IT IS SO ORDERED this 4th day of April, 2013.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE